B1040 (FORM 1040) (12/24)

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|
| **PLAINTIFFS** Lawonda Faye Turner | **DEFENDANTS** Onity Mortgage F/K/A PHH Mortgage |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) ☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☐ Other ☐ Trustee | **PARTY** (Check One Box Only) ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☑ Creditor ☐ Other ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Onity engaged in a year long Corporate Campaign of manufactured default, discharge violations, RESPA violations and Harrassment

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☑ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

FILED
U.S. BANKRUPTCY COURT
EASTERN & WESTERN DISTRICTS
OF ARKANSAS
10/02/26 2:32 pm
LINDA McCORMACK, CLERK
By: AshleyMobley
DEPUTY CLERK

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ 1,500,000.00 |
| Other Relief Sought | |

OTC

9 pages
AM

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR Lawonda Faye Turner | BANKRUPTCY CASE NO. 4:25-bk-11952 | |
| DISTRICT IN WHICH CASE IS PENDING Eastern District of Arkansas | DIVISION OFFICE Little Rock | NAME OF JUDGE Richard D Taylor |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF Lawonda Turner | DEFENDANT Onity Mortgage | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE 10/2/2026 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) Lawonda F Turner | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**
In re: LAWONDA FAYE TURNER
**CASE NO. 4:25-bk-11952**
**CHAPTER 7**

LAWONDA FAYE TURNER,
Plaintiff,
v.
ONITY MORTGAGE CORPORATION
(f/k/a PHH MORTGAGE CORPORATION),
Defendant.

**ADVERSARY PROCEEDING NO. _____________**

---

**COMPLAINT FOR DAMAGES FOR SYSTEMIC WILLFUL VIOLATIONS OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION 362(k), WILLFUL VIOLATIONS OF THE PERMANENT DISCHARGE INJUNCTION PURSUANT TO 11 U.S.C. SECTION 524, AND MULTIPLE MATERIAL BREACHES OF RESPA SERVICING STANDARDS PURSUANT TO 12 C.F.R. SECTIONS 1024.33, 1024.39, AND 1024.41**

---

Comes now the Plaintiff, Lawonda Faye Turner, appearing Pro Se, and for her formal Adversary Complaint against the Defendant, Onity Mortgage Corporation (formerly known as PHH Mortgage Corporation), respectfully states to this Honorable Court:

## INTRODUCTION

**1.** This is a core adversarial action brought by a **100% disabled military veteran** to recover actual, emotional distress, compensatory and punitive damages against a multi-billion-dollar mortgage servicer for executing a deliberate, year-long corporate campaign of manufactured default, intentional consumer access concealment, accounting fraud, material automatic stay violations, continuous property harassment, and flagrant subversion of the permanent federal bankruptcy discharge injunction. The Plaintiff explicitly seeks a final judicial award of **$1,000,000.00** to compensate for the extreme, continuous pain, suffering, medical trauma, violations and total business asset destruction engineered entirely by the Defendant.

## JURISDICTION AND VENUE

**2.** This Court possesses absolute jurisdiction over this core adversarial proceeding pursuant to **28 U.S.C. Section 1334**, **28 U.S.C. Section 157(a)**, and **28 U.S.C. Section 157(b)(2)(A) and (O)**, as a matter actively tracking an open bankruptcy case estate.
**3.** Venue is completely proper in this district pursuant to **28 U.S.C. Section 1409(a)**, as the subject primary residential real property is located within this district at **1724 Pilot Ct, Jacksonville, AR 72076**.

## THE VERBATIM FEDERAL LAWS MANDATED AGAINST THE DEFENDANT

**4.** Pursuant to **11 U.S.C. Section 362(a)(3)**, the filing of a bankruptcy petition operates as an absolute stay applicable to all entities of: "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;"
**5.** Pursuant to **11 U.S.C. Section 362(k)(1)**, the statutory remedy for a violation of the stay is mandated as follows: "Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."
**6.** Pursuant to **11 U.S.C. Section 524(a)(2)**, a bankruptcy discharge order operates as a permanent injunction: "against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;"
**7.** Pursuant to the Real Estate Settlement Procedures Act (RESPA) Regulation X, **12 C.F.R. Section 1024.33(c)(1)**, the Transfer Safe Harbor window is enacted verbatim as follows: "During the 60-day period beginning on the effective date of transfer of the servicing of any mortgage loan, if the transferor servicer (rather than the transferee servicer that should properly receive the payment) receives a payment on or before the due date applicable to such payment (including any grace period allowable under the mortgage loan instruments), a payment may not be treated as late for any purpose."
**8.** Pursuant to RESPA Regulation X, **12 C.F.R. Section 1024.39(c)**, the Continuity of Bankruptcy Servicing parameters are mandated as follows: "A servicer is exempt from the requirements of this section for a mortgage loan while the borrower is a debtor in bankruptcy under Title 11 of the United States Code."
**9.** Pursuant to RESPA Regulation X, **12 C.F.R. Section 1024.40(a)**, the continuity of contact mandate requires: "A servicer shall maintain policies and procedures that are reasonably designed to achieve the following continuity of contact objectives: (1) Provide a borrower with accurate and timely information about loss mitigation options; (2) Identify all loss mitigation options available to a borrower from the owner or assignee of the borrower's mortgage loan; (3) Provide a borrower with prompt access to a servicer's personnel who have authority to evaluate the borrower's application; and (4) Ensure that a servicer's personnel can retrieve and provide to the borrower accurate information regarding the status of a loss mitigation application and the history of the borrower's account."

## STATEMENT OF MATERIAL FACTS AND TIMELINE DECEPTION

### The Factual Calendar and the Impossibility of Contractual Delinquency

**10.** On June 10, 2025, the Plaintiff filed a voluntary Chapter 7 Bankruptcy Petition under **Case No. 4:25-bk-11952**, deploying the absolute protective automatic stay. The contract baseline mortgage payment sat via loan modification at **$763.79** per month with a standard 15-day grace period, sitting on a modified principal baseline of **$144,530.75**.

**11.** On October 21, 2025—while the Plaintiff's bankruptcy case was actively open, pending, and under absolute court protection—the Defendant, Onity Mortgage Corporation, purchased and boarded the subject mortgage note file. This onboarding date was formally admitted to under oath in a corporate business records affidavit executed by the Defendant's authorized signer, Blaine Shadle, on September 8, 2026. This entire dispute stems directly from the fact that the Plaintiff's prior counsel allowed her mortgage reaffirmation agreement to lapse, leaving the property note exposed, followed immediately by the Defendant onboarding the account while the Plaintiff was inside an active bankruptcy window.

**12.** Upon boarding the file on October 21, 2025, the Defendant immediately implemented a deceptive default narrative. The Defendant asserted that the Plaintiff was exactly "one month behind" to target the October 1, 2025 payment cycle. However, because the Plaintiff's Chapter 7 case was wide open during the entire month of October and her formal Discharge Order was not signed until November 3, 2025, that entire October payment was legally discharged. The Defendant's core collection narrative is built entirely on a mathematical and legal falsehood; they are attempting to enforce a foreclosure default track using a payment cycle that the federal court legally extinguished.

**13.** The Plaintiff was not contractually delinquent for a single day on October 1st or November 1st. On October 1st, the Defendant did not legally own or possess the loan file. Throughout November, the account sat under the protective automatic stay of the bankruptcy court. The Plaintiff owed zero pre-onboarding debt, and the Defendant was contractually and legally required to open its register and accept the Plaintiff's standard monthly payments starting fresh in December 2025.

**14.** Instead, the Defendant executed an absolute payment lockout. In a formal court response pleading signed by the Defendant's foreclosure counsel, Leontra Merriweather, the Defendant explicitly confessed in writing on Page 3 that because the account was single billing cycle behind when boarded, the Plaintiff "had no legal right to compel Onity to accept voluntary payments." This written admission stands as a direct corporate confession that the Defendant locked the payment register to intentionally manufacture an artificial default track during a federal safe harbor transition window.

**15.** Concurrently, the Defendant executed a total home address information blackout by deliberately hiding critical onboarding disclosures. On October 30, 2025, the Defendant generated its welcome correspondence but explicitly routed the documents via a formal cover letter to attorney Anh-Thu Cecille Doan, writing: *"We have been notified you are representing the borrower or accountholder listed on the following document. Accordingly, the enclosed correspondence is being directed to you. Please provide this correspondence to your client as you deem appropriate."* By keeping the Plaintiff completely in the dark, they ensured she could not access account numbers or payment processing PO boxes.

**16.** To advance this predatory track, the Defendant injected a massive, unsubstantiated accounting deficit into the file on Day One. In the Addendum to Notice of Servicing Transfer dated October 21, 2025, the Defendant unilaterally calculated and charged an ungrounded escrow deficit stating: "The escrow balance on this account is **-$1,970.80**." This represents an extreme ledger inflation engineered entirely inside a protected bankruptcy stay window to force an unpayable default state.

**17.** The Defendant utilized this illegal payment block to compel the Plaintiff onto an unneeded loan modification and loss mitigation paperwork track. The Plaintiff should have never been

forced to file for loss mitigation from day one; the Defendant engineered this document trap solely to stall account tracking and advance an illegal foreclosure track.

**18.** To mask these servicing violations, the Defendant committed systemic compliance fraud within a federal portal. In their formal written response to the Consumer Financial Protection Bureau (CFPB) under **Complaint No. 260115-27798489**, the Defendant asserted that they received the Plaintiff's application and generated a statutory acknowledgment letter on December 3, 2025, followed by an incomplete tracking notice to counsel on December 8, 2025. This represents an absolute physical and logical impossibility, as the Plaintiff's certified electronic mail transaction receipts confirm she did not compile, execute, or submit her first loss mitigation packet to the Defendant until December 24, 2025. The Defendant fabricated their federal portal tracking logs by twenty-one (21) days to create an erroneous timeline and evade RESPA safe harbor compliance audits.

**The Post-Discharge Collection Campaign, Sworn Fabricated Claim Filing, and Hostile Property Harassment**

**19.** On November 3, 2025, this Honorable Court entered a formal Discharge Order, permanently extinguishing all personal liability on the old mortgage note pursuant to **11 U.S.C. Section 524**. The Defendant willfully and repeatedly violated the Permanent Discharge Injunction by mailing monthly billing statements directly to the Plaintiff's residence that attached active, barcode-scanned tear-off remittance payment coupons demanding personal payments that escalated from **$2,295.48** all the way up to an ungrounded peak of **$10,428.51**.

**20.** To leverage this artificial default track, the Defendant submitted an explicitly padded, ungrounded arrearage ledger demand inside the Plaintiff's protective Chapter 13 bankruptcy matrix (**Case No. 4:26-bk-10929 T**). While the Plaintiff's true contractual boarding balance was exactly **$144,530.75**, the Chapter 13 Standing Trustee's Final Report documents that the Defendant filed a secured claim that was allowed at an inflated **$148,632.20**, while simultaneously tacking on an unsubstantiated mortgage arrearage claim allowed at **$9,312.93**, resulting in an ungrounded "TOTAL SECURED" court demand of **$158,754.59**. This represents an unapproved ledger padding of an extra **$14,223.84** specifically fabricated inside a federal court register to force a plan feasibility destruction and execute an automated equity stripping scheme.

**22.** To advance its illegal foreclosure and equity-stripping campaign, the Defendant unleashed a hostile, unapproved property harassment track targeting the Plaintiff's home. The Defendant repeatedly dispatched predatory drive-by agents to stake out and trespass around the Plaintiff's yard. During a severe winter storm, the Defendant ordered a third-party valuation report (**VMA Request ID: 3668928**) to photograph the home while ice and snow accumulated on the ground. The Plaintiff possesses the physical photographic proof of her house trapped in this winter storm, matching the exact ice patches that the Defendant's agent, Keyth Howard, captured directly inside page 9 of *their own valuation photos*.

**22.** On June 9, 2026, the Defendant advanced this intimidation campaign during the summer. A neighboring witness observed the Defendant's agent repeatedly passing by the property to take photographs, captured a direct physical photograph of the agent's vehicle during this act, and delivered the picture text data directly to the terrified Plaintiff. The Defendant then added insult to injury by layering a **$175.00** Broker Price Opinion charge and ongoing property inspection fees straight onto the Plaintiff's monthly billing statements—deceptively forcing a disabled veteran to look at padded debt entries to pay for the very surveillance runs used to harass her household.

**23.** In July 2026, the Defendant advanced its post-discharge collection campaign by generating a formal "Early Intervention Mortgage Assistance Notice" mailed straight to the residence. This notice explicitly utilized standard debt collection scripting to demand that the Plaintiff engage in a loan modification track to cure the very same October 1, 2025 payment cycle that had been legally discharged by the court.

**24.** While the Defendant successfully evaded statutory contempt sanctions on September 22, 2026, by deceptively utilizing the technical loophole of an "in rem" property lien, the evidence proves a continuous, year-long pattern of intentional deception designed to evade the permanent discharge injunction under **11 U.S.C. Section 524**. Far more than a single instance, the Defendant's entire corporate collection track is built upon a flagrant violation of the discharge order. This is conclusively established by the business records verified by Blaine Shadle showing that the account was targeted for immediate default upon boarding on October 21, 2025, combined with foreclosure counsel Leontra Merriweather's explicit written court admissions targeting the October 1st billing cycle to implement a total payment register lockout. Because the October 1st and November 1st cycles occurred while the case was open prior to the entry of the November 3, 2025 Discharge Order, these erroneous balances were legally extinguished by the court. The Defendant's continuous issuance of commercial billing statement matrices, property harassment surveillance runs, and the July 2026 early intervention notice targeting these exact dead baselines stand as absolute physical proof that Onity was actively using standard consumer collection scripts under the table to enforce personal debt liability against a discharged consumer.

# SPECIFIC ADVERSARIAL COUNTS AND LEGAL VIOLATIONS

## COUNT I: WILLFUL VIOLATIONS OF THE AUTOMATIC STAY (11 U.S.C. SECTION 362(k))

**25.** The Plaintiff realleges and incorporates paragraphs 1 through 24 as though fully set forth herein.

**26.** The Defendant possessed actual knowledge of the Plaintiff's open bankruptcy case estate, yet willfully violated the Automatic Stay under **11 U.S.C. Section 362(a)(3)** by executing an absolute payment register lockout, fabricating an artificial default history, and forcing an unneeded loan modification track on a court-protected asset.

**27.** The Defendant further and independently violated the Automatic Stay on March 18, 2026, during the Plaintiff's subsequent active Chapter 13 bankruptcy protection window (**Case No. 4:26-bk-10929**). Just seven days after that case was filed, the Defendant generated a billing matrix that actively assessed unapproved post-petition "Property Inspection Fees" and locked those funds inside a restrictive suspense account register in direct defiance of the active court shield.

## COUNT II: WILLFUL VIOLATIONS OF THE PERMANENT DISCHARGE INJUNCTION (11 U.S.C. SECTION 524)

**28.** The Plaintiff realleges and incorporates paragraphs 1 through 27 as though fully set forth herein.

**29.** The Defendant's systematic mailing of active, commercial tear-off remittance payment coupons, barcodes, and return envelope directions demanding thousands of dollars in personal liability on a completely discharged mortgage note constitutes a clear, willful violation of the permanent discharge injunction under **11 U.S.C. Section 524**.

**30.** The Defendant specifically violated the discharge injunction by using their July 2026 Early Intervention letter to demand payment on the October 1, 2025 cycle—a month that was legally wiped out by the bankruptcy court. The Defendant utilized their in rem property lien status as a

fraudulent cover to execute backdoor personal debt collection maneuvers against a discharged consumer.

## COUNT III: REPEATED WILLFUL VIOLATIONS OF RESPA SERVICING STANDARDS (12 C.F.R. SECTIONS 1024.33, 1024.39, AND 1024.41)

**31.** The Plaintiff realleges and incorporates paragraphs 1 through 30 as though fully set forth herein.

**32.** The Defendant violated the 60-Day RESPA Transfer Safe Harbor Act under **12 C.F.R. Section 1024.33(c)** by treating the transitional account as a permanent default on the exact single day of boarding, using a minor 6-day grace period variance as an excuse to shut down the registry and block payments.

**33.** The Defendant executed a profound breach of **12 C.F.R. Section 1024.39(c)** by running standard, automated delinquency blocks, written past-due notices, and early intervention collection blockades on an account that was active in a bankruptcy estate.

**34.** The Defendant advanced multiple material breaches of **12 C.F.R. Section 1024.41** by engaging in illegal Dual Tracking—advancing foreclosure notices on January 7, 2026, while actively holding and processing a completed mortgage assistance application submitted on December 24, 2025. They further breached this statute by fabricating incomplete documentation demands regarding a missing hardship letter that had been fully delivered, and creating predatory, non-material historical document interrogations on February 12, 2026, solely to stall, sabotage, and reject current review tracking.

**35.** The Defendant further violated **12 C.F.R. Section 1024.40(a)** by failing to maintain working policies and procedures to provide accurate account history retrieval, as unmasked by the faked, 21-day timeline metrics reported to a federal portal to conceal documentation delays, and the severe, inflated padding of the total secured claim within the Chapter 13 Standing Trustee's final report up to an exaggerated **$158,754.59** demand.

## COUNT IV: INDEPENDENT CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND OUTRAGEOUS COMMERCIAL BUSINESS DESTRUCTION

**36.** The Plaintiff realleges and incorporates paragraphs 1 through 35 as though fully set forth herein.

**37.** The Defendant's conduct in deploying drive-by surveillance units to creep around a disabled veteran's property, circle the home, photograph her residence during an active snowstorm, and deceptively bill her account statements for the surveillance runs used to harass, stalk, and embarrass her in front of her community, constitutes extreme, outrageous, and continuous property harassment designed to intentionally inflict severe emotional distress.

**38.** The Defendant's relentless harassment directly caused a catastrophic physical and multi-provider psychiatric health collapse in a **100% disabled military veteran**, completely verified across separate federal VA medical chart records. These records include a July 21, 2026 clinical note by Chauntee S. Coleman, LCSW, documenting situational passive suicidal ideation, severe tearfulness, worsening panic attacks, and migraines directly induced by the bank's foreclosure tracks, tracking a PHQ9 score of 22 (Severe Depression) and a GAD7 score of 19 (Severe Anxiety). They further include May 15, 2026 and January 30, 2026 psychiatric medication management records by Donna P. Jenkins-Brown, MD, documenting regressed, helpless moods, fatigue, and anhedonia due entirely to the bank's illegal foreclosure tracks, explicitly tracking a clinical need to adjust and increase psychiatric medications including Fluoxetine and Trazodone, while forcing the clinical prescription of specialized medical anti-anxiety tracking devices

including a Calmigo. They further include a February 13, 2026 clinical pharmacy record executed by Madisyn Strain, PharmD, documenting that the profound stress from the bank's continuous foreclosure threats directly induced an acute physical metabolic breakdown of the Plaintiff's endocrine system, tracking severe blood sugar trends with a dangerous average glucose metric of 191 mg/dL and an elevated GMI of 7.9% via Dexcom Clarity sensor monitoring.

**39.** This intense daily harassment and subsequent medical incapacitation forced the total shutdown and closure of the Plaintiff's commercial freight broker business, **LFT Transport LLC**. This major corporate asset was officially registered under the Arkansas Secretary of State on September 19, 2023, carried a Good Standing certificate, was fully secured with a **$1,000,000.00** Commercial General Liability and **$150,000.00** Contingent Cargo program underwritten by Great American and Underwriters at Lloyd's, and held a certified Federal Service-Disabled Veteran-Owned Small Business status. This enterprise was actively executed as an approved **GSA Transportation Service Provider Agreement (TSP)** to coordinate federal logistics. This pristine commercial asset was completely destroyed, closed down, and liquidated before generating a single dollar of revenue due to the Plaintiff's stress-induced medical incapacitation, effectively stealing a major family financial asset out of existence.

**PRAYER FOR RELIEF AND DEMAND FOR COMPENSATORY AND PUNITIVE DAMAGES**

WHEREFORE, the Plaintiff, Lawonda Faye Turner, respectfully prays that this Honorable Court enter a formal Judgment against the Defendant, Onity Mortgage Corporation, awarding the following relief:

**A.** A formal judicial finding that the Defendant willfully and repeatedly violated the Chapter 7 Automatic Stay, the Permanent Discharge Injunction, and federal RESPA mortgage servicing regulations across a continuous, year-long campaign of harassment;

**B.** A final award of **$1,500,000.00 (One Million Dollars and Zero Cents) in Compensatory Damages** to hold the Defendant financially liable for the actual economic asset destruction, permanent metabolic endocrine trauma, severe psychiatric injury, and the total liquidation of the Plaintiff's commercial business asset, LFT Transport LLC;

**C.** An award of substantial **Punitive Damages pursuant to 11 U.S.C. Section 362(k)(1)** to severely punish this multi-billion-dollar corporation for its continuous, willful misconduct and to completely deter them from ever executing predatory collection tracks against discharged consumers and disabled military veterans;"

**D.** Granting the Plaintiff such other, further, and general relief to which she may be justly entitled under the law and equity.

Dated: October 2, 2026

Respectfully Submitted,

**Lawonda Faye Turner, Pro Se Plaintiff**
1724 Pilot Ct, Jacksonville, AR 72076
501-394-8155