**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

FILED
U.S. BANKRUPTCY COURT
EASTERN & WESTERN DISTRICTS
OF ARKANSAS
10/14/26 3:19 pm
LINDA McCORMACK, CLERK
By: PDavis
DEPUTY CLERK

**In re: LAWONDA FAYE TURNER**
**CASE NO. 4:25-bk-11952**
**CHAPTER 7**

**LAWONDA FAYE TURNER, Plaintiff,**
**v.**
**ONITY MORTGAGE CORPORATION (f/k/a PHH MORTGAGE CORPORATION), Defendant.**

**ADVERSARY PROCEEDING NO. 4:26-ap-01066**

# SECOND AMENDED COMPLAINT FOR DAMAGES FOR SYSTEMIC WILLFUL VIOLATIONS OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION 362(k), WILLFUL VIOLATIONS OF THE PERMANENT DISCHARGE INJUNCTION PURSUANT TO 11 U.S.C. SECTION 524, MATERIAL TILA SUCCESSOR IN INTEREST VIOLATIONS PURSUANT TO 12 C.F.R. SECTION 1026.20(f), AND MULTIPLE MATERIAL BREACHES OF RESPA SERVICING STANDARDS PURSUANT TO 12 C.F.R. SECTIONS 1024.17, 1024.33, 1024.40, AND 1024.41

Comes now the Plaintiff, Lawonda Faye Turner, appearing Pro Se, and for her formal Second Amended Adversary Complaint against the Defendant, Onity Mortgage Corporation (formerly known as PHH Mortgage Corporation), respectfully states to this Honorable Court:

## INTRODUCTION

1. This is a core adversarial action brought by a 100% disabled military veteran to recover maximum actual, severe emotional distress, compensatory, and punitive damages against a multi-billion-dollar mortgage servicer for executing a deliberate, year-long corporate campaign of manufactured default, intentional access concealment, accounting fraud, material automatic stay violations, continuous predatory property harassment, public humiliation, and flagrant subversion of the permanent federal bankruptcy discharge injunction. The Plaintiff explicitly seeks a final judicial award of $1,500,000.00 to compensate for the extreme, continuous pain, suffering, public degradation, medical trauma, and total business asset destruction engineered entirely by the Defendant.

## JURISDICTION AND VENUE

2. This Court possesses absolute jurisdiction over this core adversarial proceeding pursuant to **28 U.S.C. Section 1334**, **28 U.S.C. Section 157(a)**, and **28 U.S.C. Section 157(b)(2)(A) and (O)**, as a matter actively tracking an open bankruptcy case estate.

11 pages

3. Venue is completely proper in this district pursuant to **28 U.S.C. Section 1409(a)**, as the subject primary residential real property is located within this district at 1724 Pilot Ct, Jacksonville, AR 72076.

# THE VERBATIM FEDERAL LAWS MANDATED AGAINST THE DEFENDANT

4. Pursuant to **11 U.S.C. Section 362(a)(3)**, the filing of a bankruptcy petition operates as an absolute stay applicable to all entities of: "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;"
5. Pursuant to **11 U.S.C. Section 362(k)(1)**, the statutory remedy for a violation of the stay is mandated as follows: "Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."
6. Pursuant to **11 U.S.C. Section 524(a)(2)**, a bankruptcy discharge order operates as a permanent injunction: "against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;"
7. Pursuant to the Real Estate Settlement Procedures Act (RESPA) Regulation X, **12 C.F.R. Section 1024.33(c)(1)**, the Transfer Safe Harbor window is enacted verbatim as follows: "During the 60-day period beginning on the effective date of transfer of the servicing of any mortgage loan, if the transferor servicer (rather than the transferee servicer that should properly receive the payment) receives a payment on or before the due date applicable to such payment (including any grace period allowable under the mortgage loan instruments), a payment may not be treated as late for any purpose."
8. Pursuant to the Truth in Lending Act (TILA) Regulation Z, **12 C.F.R. Section 1026.20(f)**, Successor in Interest disclosure mandates require: "With respect to a successor in interest, a servicer must provide the disclosures required by this section upon confirmation of the successor in interest's identity and ownership interest in the property."
9. Pursuant to RESPA Regulation X, **12 C.F.R. Section 1024.17**, mortgage escrow account parameters strictly bar servicers from fabricating day-one deficit targets or padding escrow advances beyond strict historical accounting limitations.
10. Pursuant to RESPA Regulation X, **12 C.F.R. Section 1024.40**, mortgage servicers must maintain working policies and procedures reasonably designed to ensure immediate continuity of contact, provide accurate account statement histories, and strictly ensure a borrower has direct access to personnel with authority to evaluate the account.
11. Pursuant to RESPA Regulation X, **12 C.F.R. Section 1024.41(g)**, the Dual Tracking prohibition dictates: "If a borrower submits a complete loss mitigation application after a servicer has initiated foreclosure, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless the servicer has denied the application and the appeals timeline has completely run out."

# STATEMENT OF MATERIAL FACTS AND TIMELINE DECEPTION

## The Factual Calendar and the Permanent Legal Extinguishment of Debt

12. On June 10, 2025, the Debtor filed a voluntary Chapter 7 Bankruptcy Petition under Case No. 4:25-bk-11952, deploying the absolute protective automatic stay. The contract baseline mortgage payment sat via loan modification at $765.16 per month with a standard 15-day grace period, sitting on a modified principal baseline of $144,530.75.

13. On October 21, 2025—while the Debtor's bankruptcy case was actively open, pending, and under absolute court protection—the Defendant, Onity Mortgage Corporation, purchased and boarded the subject mortgage note file. Under long-standing federal bankruptcy law, because the Defendant acquired the loan note while it was actively inside an open bankruptcy estate, the Defendant is legally classified as a Successor-in-Interest and is bound by the Automatic Stay Inheritance Rule. The Defendant does not get a clean slate; they legally stepped directly into the shoes of the prior servicer. This onboarding date was formally admitted to under oath in a corporate business records affidavit executed by the Defendant's authorized signer, Blaine Shadle, on September 8, 2026.

14. This entire core dispute stems directly from material professional omissions by prior consumer bankruptcy counsel, Anh-Thu Cecille Doan, who allowed the formal Chapter 7 mortgage reaffirmation agreement deadline to completely lapse without execution, thereby leaving the primary residential note unsecured and exposed to predatory secondary market transfers while the Plaintiff remained under the structural protection of the bankruptcy court.

15. Upon boarding the note, the Defendant immediately deployed a predatory default track, claiming the account was one month behind to target an October 1, 2025 payment cycle, and subsequently targeting a November 1, 2025 payment cycle. Because the Chapter 7 case was wide open during October and November, and the permanent Discharge Order was not entered until November 3, 2025, **both the October 1st and November 1st payment cycles occurred pre-discharge and were legally, permanently extinguished by operation of law under 11 U.S.C. Section 524(a)(2).** The Defendant's core collection narrative is built entirely on a mathematical and legal falsehood; they are attempting to enforce an unapproved foreclosure default track using dead debt that the federal court legally wiped out.

16. The Plaintiff was not contractually delinquent for a single day when the loan was boarded. Throughout October and November, the account sat under absolute bankruptcy court stay protections. The Plaintiff owed zero pre-onboarding debt, and the Defendant was contractually and legally required to open its register and allow the Plaintiff to start making regular monthly payments fresh in December 2025.

17. Instead, the Defendant executed an absolute payment register lockout to aggressively advance its day-one agenda to steal the Plaintiff's home and equity. In a formal court response pleading, **the Defendant's lead foreclosure counsel, Leontra Merriweather, explicitly confessed in writing on Page 3, Paragraph 2 that because they deemed the account to be a billing cycle behind when boarded, the Plaintiff "had no legal right to compel Onity to accept voluntary payments."** This written admission stands as a direct, sworn corporate confession that the Defendant intentionally locked its payment register to manufacture an artificial default track and execute an illegal lockout during a federal safe harbor window.

18. Concurrently, the Defendant executed a total information blockade by deliberately hiding onboarding disclosures and completely concealing the new account configurations. On October 30, 2025, the Defendant generated its welcome correspondence but intentionally withheld it from the Plaintiff. **As exposed by the bank's own exhibits, Onity admitted in writing that they routed the welcome documentation via a formal cover letter strictly to prior counsel, Anh-Thu Cecille Doan, instructing her to forward it only "as you deem appropriate."** By intercepting the Plaintiff's files and redirecting them to a third party, the Defendant intentionally prevented the Plaintiff from receiving her new account number, tracking her statement registers, or accessing the correct payment processing PO boxes, trapping the account in an unpayable default state while advancing a foreclosure track behind closed doors.

19. To advance this predatory scheme, the Defendant executed a Day-One Escrow Balancing Fraud in direct violation of **12 C.F.R. Section 1024.17.** On the exact day of onboarding, the Defendant unilaterally injected an arbitrary escrow deficit of **-$1,970.80** directly into the account registers, despite the contractual escrow baseline being fixed at $286.78. Because the pre-onboarding debt was legally zero, charging an instant negative balance of -$1,970.80 is a mathematical fraud fabricated inside an active bankruptcy window to force plan feasibility destruction.
20. The Defendant utilized this illegal payment block to compel the Plaintiff onto an unneeded loan modification and loss mitigation paperwork track. The Plaintiff should have never been forced to file for loss mitigation from day one; the Defendant engineered this document loop solely to stall account tracking and advance an illegal foreclosure track.
21. To mask these servicing violations, the Defendant committed systemic compliance fraud within a federal portal. The Defendant faked their federal portal tracking logs backward by twenty-one (21) days to evade safe harbor compliance audits, claiming they acknowledged a loss mitigation application on December 3, 2025, when the Plaintiff's certified electronic receipts confirm she did not submit her first packet until December 24, 2025.

**The Post-Discharge Collection Campaign, Sworn Fabricated Claim Filing, and Hostile Property Harassment**

22. On November 3, 2025, this Honorable Court entered a formal Discharge Order, permanently extinguishing all personal liability on the old mortgage note pursuant to **11 U.S.C. Section 524.** The Defendant willfully and repeatedly violated the Permanent Discharge Injunction by mailing monthly billing statements directly to the residence that attached active, barcode-scanned tear-off remittance payment coupons demanding personal payments that escalated to an ungrounded peak of $10,428.51.
23. To leverage this artificial default track, the Defendant submitted an explicitly padded, ungrounded arrearage ledger demand inside the protective bankruptcy case registry. While the prior Chapter 13 case was ultimately dismissed due to severe professional negligence committed by subsequent legal aid counsel Forrest Stolzer—who completely failed to notify the Plaintiff of past-due filing installments and entirely omitted the vehicle asset from the schedules—the Defendant weaponized that dismissal to accelerate an unapproved foreclosure track under the false color of an *in rem* defense.
24. The official **Chapter 13 Trustee's Final Report and Account** filed by Trustee Jack W. Gooding unmasks the exact parameters of the Defendant's court ledger padding. While the true contractual principal onboarding baseline was exactly $144,530.75, the Defendant filed a secured claim allowed at an inflated $148,632.20, while simultaneously tacking on an unsubstantiated mortgage arrearage claim allowed at $9,312.93, resulting in an ungrounded "TOTAL SECURED" court demand of $158,754.59. This represents an unapproved ledger padding of an extra **Award Padding of $14,223.84** specifically fabricated inside a federal court register to force a plan feasibility destruction and execute an automated equity stripping scheme.
25. To advance its foreclosure campaign, the Defendant unleashed a hostile, malicious property harassment track targeting the residential property. The Defendant repeatedly dispatched predatory drive-by field agents to stake out and trespass around the private yard. During a severe winter storm, the Defendant ordered a third-party valuation report to photograph the home while ice and snow accumulated on the ground, deceptively layering property inspection and Broker Price Opinion charges straight onto the statements.
26. **This intimidation campaign escalated to a level of public degradation and severe**

**neighborhood embarrassment on June 9, 2026.** On this date, multiple neighboring witnesses observed the Defendant's field agents repeatedly passing by, hovering at the curb, and aggressively taking surveillance photographs of the private home and yard. **The neighborhood witnesses were so alarmed by this stalking behavior that they captured physical photographs of the agent's surveillance vehicle and texted the data directly to the Plaintiff, creating a humiliating, terrifying, and deeply degrading environment for the family in front of the local community.** The Defendant then forced the Plaintiff to pay for the surveillance units used to stalk the household by forcing these fees directly onto the monthly bill entries.

27. In July 2026, the Defendant advanced its post-discharge collection campaign by generating a formal boilerplate "Early Intervention Mortgage Assistance Notice" mailed straight to the residence. This notice explicitly utilized standard debt collection scripting to demand that the Plaintiff engage in a modification track to pay for the contractually and legally discharged October 1, 2025 and November 1, 2025 payment cycles. The Defendant utilized their *in rem* property lien status as a fraudulent cover story to execute backdoor personal debt collection maneuvers against a discharged consumer.

## SPECIFIC ADVERSARIAL COUNTS AND LEGAL VIOLATIONS

### COUNT I: WILLFUL VIOLATIONS OF THE AUTOMATIC STAY (11 U.S.C. SECTION 362(k))

28. The Plaintiff realleges and incorporates paragraphs 1 through 27 as though fully set forth herein.
29. The Defendant possessed actual knowledge of the open bankruptcy case estate, yet willfully violated the Automatic Stay under **11 U.S.C. Section 362(a)(3)** by executing an absolute payment register lockout, fabricating an artificial default history, and forcing an unneeded loss mitigation loop on a court-protected asset.
30. The Defendant further and independently violated the Automatic Stay during the subsequent active Chapter 13 bankruptcy protection window (Case No. 4:26-bk-13899). The Defendant generated billing matrices that actively assessed unapproved post-petition inspection and BPO fees, locking those funds inside a restrictive suspense account register in direct defiance of the active court shield.

### COUNT II: WILLFUL VIOLATIONS OF THE PERMANENT DISCHARGE INJUNCTION (11 U.S.C. SECTION 524)

31. The Plaintiff realleges and incorporates paragraphs 1 through 30 as though fully set forth herein.
32. The Defendant's systematic mailing of active, commercial tear-off remittance payment coupons demanding thousands of dollars in personal liability on a completely discharged mortgage note constitutes a clear, willful violation of the permanent discharge injunction under **11 U.S.C. Section 524.**
33. The Defendant specifically violated the discharge injunction by using their July 2026 Early Intervention letter and monthly billing coupons to demand payment on the October 1, 2025 and November 1, 2025 cycles—both of which represented pre-discharge debt legally and permanently wiped out by the bankruptcy court.

### COUNT III: WILLFUL VIOLATIONS OF THE TILA SUCCESSOR IN INTEREST DISCLOSURE MANDATES (12 C.F.R. SECTION 1026.20(f))

34. The Plaintiff realleges and incorporates paragraphs 1 through 33 as though fully set forth herein.

35. The Defendant possessed actual corporate knowledge that the Plaintiff was the verified owner-occupant and debtor in an open bankruptcy estate, legally establishing her status as a Successor in Interest from day one of onboarding.

36. The Defendant willfully violated **12 C.F.R. Section 1026.20(f)** and **11 U.S.C. Section 362(k)** by intentionally intercepting and concealing the mandatory onboarding disclosures, account numbers, and payment processing PO boxes. By routing the welcome correspondence cover letters strictly to a third party with a directive to forward them only "as you deem appropriate," and subsequently utilizing foreclosure counsel Leontra Merriweather's written court admissions to enforce a total payment lockout, the Defendant executed a bad-faith information blockade to deliberately trap the account in an unpayable default state to advance their agenda to steal the home.

**COUNT IV: MATERIAL BREACHES OF RESPA SERVICING TRANSFER SAFE HARBOR ACT (12 C.F.R. SECTION 1024.33(c))**

37. The Plaintiff realleges and incorporates paragraphs 1 through 36 as though fully set forth herein.

38. The Defendant violated the 60-Day RESPA Transfer Safe Harbor Act under **12 C.F.R. Section 1024.33(c)** by treating the transitional account as a permanent default on the exact single day of onboarding, using a minor pre-onboarding cycle variance as an illegal excuse to shut down the registry, block payments, and deny the Plaintiff her statutory right to voluntary compliance.

**COUNT V: MATERIAL BREACHES OF RESPA LOSS MITIGATION AND DUAL TRACKING PROHIBITIONS (12 C.F.R. SECTION 1024.41)**

39. The Plaintiff realleges and incorporates paragraphs 1 through 38 as though fully set forth herein.

40. The Defendant advanced multiple material breaches of **12 C.F.R. Section 1024.41** by engaging in severe, illegal Dual Tracking. The Defendant advanced a formal 10-Day Pre-Foreclosure Notice on January 7, 2026, while actively holding and processing a completed mortgage assistance application submitted by the Plaintiff on December 24, 2025.

41. The Defendant further breached this statute by intentionally forcing a legally dead, discharged debt into a loss mitigation loop, fabricating incomplete documentation demands regarding items that had been fully delivered, and demanding a written hardship letter explaining a default with an entirely separate lender years before the Defendant ever boarded the note, solely to stall review tracking and advance an illegal foreclosure track under the table.

**COUNT VI: REPEATED BREACHES OF RESPA ACCOUNTING STANDARDS AND ESCROW DATA ACCURACY MANDATES (12 C.F.R. SECTIONS 1024.17 AND 1024.40(a))**

42. The Plaintiff realleges and incorporates paragraphs 1 through 41 as though fully set forth herein.

43. The Defendant executed a profound, material violation of **12 C.F.R. Section 1024.17** and **1024.40(a)** by completely failing to maintain working policies and procedures to retrieve an accurate account history from the transferor lender. This is established by their creation of a Fraudulent Onboarding Escrow Deficit of -$1,970.80 on Day One, the 21-day compliance metrics faked within a federal portal to conceal document delays, and the

severe, inflated padding of the total secured claim within the court registry up to an exaggerated $158,754.59 demand specifically designed to destroy plan feasibility.

**COUNT VII: INDEPENDENT CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND OUTRAGEOUS COMMERCIAL BUSINESS DESTRUCTION**

44. The Plaintiff realleges and incorporates paragraphs 1 through 43 as though fully set forth herein.
45. The Defendant's conduct in deploying drive-by surveillance units to creep around the private yard, circle the home, photograph the residence during an active snowstorm, and deceptively bill the account statements for the surveillance runs used to harass, stalk, and deeply embarrass and humiliate the Plaintiff in front of her neighbors and community, constitutes extreme, outrageous, and continuous property harassment designed to intentionally inflict severe emotional distress.
46. The Defendant's relentless harassment directly caused a catastrophic physical and multi-provider psychiatric health breakdown in a 100% disabled military veteran, completely verified across separate federal VA medical chart records, documenting a PHQ9 score of 22 (Severe Depression), a GAD7 score of 19 (Severe Anxiety), situational passive suicidal ideation, and an acute physical endocrine breakdown requiring the clinical prescription of specialized medical anti-anxiety device including a CalmiGo.
47. This intense daily harassment and subsequent medical incapacitation forced the total shutdown, closure, and liquidation of the commercial freight broker business, **LFT Transport LLC**—a certified Service-Disabled Veteran-Owned Small Business asset and an officially approved federal GSA Transportation Vendor, effectively stealing a major family financial asset out of existence before it could generate a single dollar of revenue.

## PRAYER FOR RELIEF AND DEMAND FOR COMPENSATORY AND PUNITIVE DAMAGES

WHEREFORE, the Plaintiff, Lawonda Faye Turner, respectfully prays that this Honorable Court enter a formal Judgment against the Defendant, Onity Mortgage Corporation, awarding the following relief:

A. A formal judicial finding that the Defendant willfully and repeatedly violated the Chapter 7 Automatic Stay, the Permanent Discharge Injunction, and federal TILA and RESPA mortgage servicing regulations across a continuous, year-long campaign of harassment;

B. A final award of $1,500,000.00 (One Million Five Hundred Thousand Dollars and Zero Cents) in Compensatory Damages to hold the Defendant financially liable for the actual economic asset destruction, permanent metabolic endocrine trauma, severe psychiatric injury, public degradation, and profound emotional distress;

C. A full equitable order requiring the Defendant to completely reset all mortgage registers to a true baseline status, including the permanent removal and cancellation of all corporate ledger padding, unapproved property inspection fees, broker price opinions, and all subsequent late fees;

D. An award of substantial Punitive Damages pursuant to **11 U.S.C. Section 362(k)(1)** to severely punish this multi-billion-dollar corporation for its continuous, willful misconduct, and to completely deter them from ever executing predatory collection tracks against discharged consumers and disabled military veterans again;

E. Granting the Plaintiff such other, further, and general relief to which she may be justly entitled under the law and equity.

Dated: October 10, 2026
Respectfully Submitted,

---

**Lawonda Faye Turner, Pro Se Plaintiff**
1724 Pilot Ct, Jacksonville, AR 72076
501-394-8155
lawonda.turner@yahoo.com

---

## EXHIBIT A: COMPREHENSIVE CHRONOLOGICAL MATRIX OF CUMULATIVE MORTGAGE SERVICING VIOLATIONS

### PHASE I: THE PRE-DISCHARGE INHERITED PROTECTION WINDOW & OMISSION FRAUD

- **JUNE 10, 2025**
  - *The Case Event:* The Debtor files a voluntary **Chapter 7 Bankruptcy Petition** under Case No. 4:25-bk-11952.
  - *The Imposition of Law:* The **11 U.S.C. Section 362(a) Automatic Stay** immediately drops over the primary residential property, legally freezing all personal debt liability and mortgage account registers.
  - *The Contractual Baseline:* The modified mortgage installment payment is fixed at **$765.16 per month** ($478.38 principal/interest + $286.78 escrow baseline) on a modified principal baseline of **$144,530.75.**
- **SEPTEMBER 11, 2025**
  - *The Case Event:* The Bankruptcy Court enters an official **Order Granting Motion to Extend Time to File Reaffirmation Agreements**, explicitly extending the legal filing timeline to October 31, 2025. Prior bankruptcy counsel completely fails to execute or file an agreement by this deadline, leaving the note unsecured on the secondary market.
- **OCTOBER 21, 2025**
  - *The Case Event:* Onity Mortgage Corporation purchases and boards the mortgage note file.
  - *THE WILLFUL DAY-ONE ONBOARDING STAY VIOLATIONS:* Because the bankruptcy estate is actively open and pending, Onity boards the note as a **Successor-in-Interest bound by the active Automatic Stay under 11 U.S.C. Section 362(a)(3).**

- *The Deceptive Default Track:* Onity immediately backdates internal registers to claim the account is "one month behind" to target an October 1, 2025 payment cycle, establishing an illegal default baseline.
- *The Day-One Escrow Accounting Fraud:* Onity unilaterally injects an arbitrary -**$1,970.80 escrow deficit** directly onto the account registers in direct violation of **12 C.F.R. Section 1024.17**, despite the pre-onboarding bankruptcy balance being legally zero.

- **OCTOBER 27, 2025**
  - *The Case Event:* Onity logs the "Initial Principal" of **-$144,530.75** into its transaction history logs, yet deliberately continues to track an artificial delinquency behind closed doors.
- **OCTOBER 30, 2025**
  - *The Case Event:* Onity generates its official Welcome Correspondence disclosures.
  - *THE WILLFUL TILA DISCLOSURE BLOCKADE VIOLATION:* In direct violation of **12 C.F.R. Section 1026.20(f) and Section 1024.30**, Onity executes a total information blockade by **deliberately intercepting and redirecting account credentials**. Onity mails the package strictly to prior counsel's office with a cover letter stating: *"Please provide this correspondence to your client as you deem appropriate."* By hiding the new account number and payment processing PO boxes, Onity structurally traps the Debtor in an unpayable state.
- **NOVEMBER 1, 2025**
  - *The Case Event:* The November mortgage billing cycle hits the account registers while the bankruptcy estate remains actively open and protected.
- **NOVEMBER 3, 2025**
  - *The Case Event:* Chief Judge Richard D. Taylor enters the permanent **Federal Order of Discharge.**
  - *THE EXTINGUISHMENT OF LIABILITY:* Because the October 1st and November 1st payment cycles both occurred pre-discharge while the case was protected, **both billing cycles were permanently and legally extinguished by operation of law under 11 U.S.C. Section 524(a)(2).** All personal liability on those months is wiped to **$0.00.** Onity is legally mandated to open its registers and accept regular voluntary payments fresh starting on December 1, 2025.
- **NOVEMBER 10, 2025**
  - *The Case Event:* Onity delivers its first physical **Monthly Mortgage Statement** directly to the residence.
  - *THE WILLFUL DISCHARGE INJUNCTION VIOLATION:* Onity flagrantly violates the permanent injunction by attaching a barcode-scanned tear-off remittance payment coupon explicitly demanding a **"Past Unpaid Amount" of $1,530.32** (the exact sum of the two legally dead October and November cycles) alongside a **Total Payment Demand of $2,295.48**, actively trying to collect on a discharged debt.

**PHASE II: THE MONITORED PAYMENT LOCKOUT & PORTAL TIMELINE FRAUD**

- **DECEMBER 2025**
  - *The Case Event:* The Plaintiff attempts to execute standard, regular monthly payments to establish a fresh post-bankruptcy track.

- *THE PAYMENT REGISTER LOCKOUT:* Onity executes an absolute electronic payment lockout, refusing to accept any voluntary payments. Foreclosure counsel explicitly confesses in writing on Page 3 of subsequent court pleadings: *"Debtor had no legal right to compel Onity to accept voluntary payments."* Onity weaponizes this lockout to force the account into an unneeded loss mitigation loop to handle the manufactured default track.

- **DECEMBER 24, 2025**
  - *The Case Event:* Driven into a corner by the payment register lockout, the Plaintiff successfully compiles, executes, and submits a completed **Loss Mitigation Assistance Packet** to Onity via tracked certified delivery.
- **THE COMPLIANCE PORTAL TIMELINE FRAUD**
  - *The Case Event:* Onity explicitly fakes its federal portal tracking logs backward by twenty-one (21) days, falsely claiming to the Consumer Financial Protection Bureau (CFPB) under Complaint No. 260115-27798489 that they received and acknowledged the application on **December 3, 2025**, and generated an incomplete notice on **December 8, 2025**. Onity fabricates these dates out of thin air to evade **RESPA Regulation X** timeline compliance audits.

## PHASE III: THE COMPREHENSIVE DUAL-TRACKING, SURVEILLANCE, AND COURT LEDGER FRAUD

- **JANUARY 7, 2026**
  - *THE WILLFUL RESPA DUAL-TRACKING VIOLATION:* While actively holding, processing, and stalling the completed mortgage assistance packet, Onity advances an aggressive foreclosure track by issuing a formal **10-Day Pre-Foreclosure Notice** in direct defiance of **12 C.F.R. Section 1024.41(g)**.
  - *THE FIRST INITIAL BROKER PRICE OPINION (BPO) & SURVEILLANCE CAMPAIGN:* Onity unleashes a hostile field intimidation campaign by dispatching predatory drive-by agents to trespass around the private yard and circle the home. Onity orders an unapproved third-party property valuation report to photograph the home while a severe winter snowstorm accumulates ice and snow on the front porch. This serves as the **very first initial BPO and valuation surveillance run** conducted on the asset, subsequently charging the monthly account statements a **$175.00 BPO fee** and post-petition **$25.00 Inspection Fees** to force the Debtor to pay for the surveillance.
- **JANUARY 20, 2026**
  - *The Case Event:* Onity issues a bad-faith Incomplete Documentation Notice, intentionally rejecting completed tracking by demanding a written hardship letter explaining why a default occurred on a separate modification years before Onity ever boarded the loan file, using retroactive document traps to advance the foreclosure track.
- **JUNE 9, 2026**
  - *The Case Event:* The property surveillance campaign escalates into a severe, public neighborhood embarrassment. Neighboring witnesses capture direct physical photographs of Onity's field agents hovering at the curb and taking surveillance pictures of the private home. The neighbors text the vehicle pictures to the Plaintiff, creating a deeply degrading, humiliating, and terrifying environment for the family in front of the local community.

- **JUNE 30, 2026**
  - *The Case Event:* Subsequent counsel allows the first Chapter 13 case to be procedurally dismissed due to a total failure to notify the Debtor of clerk fee installments and an omission of the vehicle from the schedules. Onity immediately weaponized this dismissal to bypass the stay protection shield and accelerate a foreclosure track under the false color of an *in rem* property lien defense.
- **JULY 7, 2026**
  - *THE BOILERPLATE COLLECTION ABUSE:* Onity generates a formal **Early Intervention Mortgage Assistance Notice** mailed directly to the residence. This document explicitly utilizes standard debt collection scripting to demand that the Plaintiff engage in a modification track to pay for the contractually and legally discharged October 1, 2025 payment cycle, using an *in-rem* property lien cover story to execute a personal collection maneuver on dead debt.
- **JULY 10, 2026**
  - *The Case Event:* Outraged by Onity's post-discharge property harassment and collection track, Chief Judge Richard D. Taylor enters an extraordinary **Order Reopening Case Sua Sponte** to investigate the discharge injunction violations.
- **SWORN COURT REGISTRY ACCOUNTING FRAUD & ARREARAGE PADDING**
  - *The Ultimate Extraction:* To destroy reorganization feasibility, Onity marches into the federal court register and submits a sworn secured claim allowed at an inflated **$148,632.20** ongoing principal baseline alongside a faked **$9,312.93 arrearage demand**. This executes a final, unapproved corporate balance padding of an extra **$14,223.84** over the true $144,530.75 contractual boarding principal, designed to execute an automated equity-stripping scheme and force a plan feasibility destruction.

---

Dated: October 10, 2026
Respectfully Submitted,

**Lawonda Faye Turner, Pro Se Plaintiff**
1724 Pilot Ct, Jacksonville, AR 72076
501-394-8155
lawonda.turner@yahoo.com

Lawonda Turner
1724 Pilot Ct
Jacksonville Ar 72076

CERTIFIED MAIL®

9589 0710 5270 3565 6997 09

Retail

UNITED STATES POSTAL SERVICE®

72201

RDC 99

U.S. POSTAGE PA
FCM LG ENV
JACKSONVILLE, A
OCT 10, 2026

$7.82

S2324K502516-06

Clerk, U.S. Bankruptcy Court
Eastern District of Arkansas
300 W. Second St
Little Rock, Ar 72201